```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

JACOB G. MARLEY,                  :  Civil Action No. 06-4926(NLH)
                                  :
        Plaintiff,                :
                                  :
     v.                           :  **OPINION**
                                  :
CORT FURNITURE RENTAL CORP.,      :
                                  :
        Defendant.                :
                                  :

**APPEARANCES:**

Ari R. Karpf, Esquire
Justin L. Swidler, Esquire
Karpf, Karpf & Virant, Esqs.
Neshaminy Plaza
3070 Bristol Pike
Building 1, Suite 102
Bensalem, PA 19020

   *Attorneys for Plaintiff*

Kathleen O'Malley, Esquire
Duane Morris, LLP
100 American Metro Boulevard
Suite 150
Hamilton, NJ 08543-5203

   *Attorney for Defendant*

**HILLMAN**, District Judge

   This matter has come before the Court on defendant's motion for summary judgment on plaintiff's claims of discrimination because of his race.[1]  For the reasons expressed below,

---

[1] Also before the Court is plaintiff's motion to redact exhibits to his opposition to defendant's motion for summary judgment. Plaintiff states that he inadvertently filed unredacted documents which contain sensitive information, including a witness's social security number and two witnesses's addresses. Because the electronic filing rules prohibit the filing of such

defendant's motion will be granted.

## BACKGROUND

Plaintiff, Jacob G. Marley, was employed by defendant, CORT Furniture Rental, from October 2004 until November 12, 2006, when he took a leave of absence from which he never returned. During his employment with CORT, Marley served as a delivery manager (i.e., driver), an inventory control clerk ("ICC"), and warehouseman. As a delivery manager, Marley loaded delivery trucks with furniture and then delivered the furniture to customers. In his role as ICC, Marley kept track of CORT's inventory of furniture by using a scanning gun to perform "cycle counts" of the furniture inventory. As a warehouseman, Marley was responsible for locating specific pieces of furniture that had been rented or sold to a customer.

Marley, who came to this country from Liberia in 1998, claims that he was denied sales and management level positions, for which he applied and was qualified, due to his accent. As a result of this discrimination, Marley claims that CORT violated his rights under 42 U.S.C. § 1981 and New Jersey's Law Against Discrimination. CORT denies these claims, and has filed a motion for summary judgment. Marley opposes CORT's motion.

---

information, see Local Civ. R. 5.2, the Court will grant plaintiff's motion.

**DISCUSSION**

    **A.**    **Jurisdiction**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1981, as well as pursuant to New Jersey state law. This Court has jurisdiction over plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1367.

    **B.**    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and

3

all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Marley claims that he was denied three promotions based on his accent[2]: (1) executive sales, (2) retail sales, and (3)

---

[2] Even though Marley is from Liberia, Africa, English is his native language. He speaks English with an accent. The theory of Marley's race discrimination claim is not that anyone at CORT ever made any reference to his race, but that he was discriminated against because of his accent, and his accent is inextricably intertwined with his race. (Pl. Opp. at 11.) The Court notes that under Marley's theory, a Caucasian African man with the same accent as Marley would not have a cause of action under § 1981 or NJLAD.

4

assistant distribution manager.³ In order to establish a *prima facie* case for failure to promote under § 1981 or the NJLAD⁴, a plaintiff has the initial burden of proving that: (1) he belongs to a protected category; (2) he applied for and was qualified for a job in an available position; (3) was rejected; (4) and, after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position. Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997). Once a plaintiff meets his *prima facie* case, there are two methods by which a plaintiff can prove his claim--through either direct or circumstantial evidence. If a plaintiff has direct evidence that an impermissible criterion was a substantial motivating factor in the decision to deny him a

---

³In his complaint, Marley also makes claims for demotion and disparate pay based on his race. CORT moved for summary judgment on these claims, but Marley did not oppose CORT's motion on these claims. In its reply brief, CORT argues that Marley's failure to address CORT's motion on these claims means that Marley has abandoned them, and, therefore, it is entitled to summary judgment. Marley's sur-reply, although addressing CORT's arguments with regard to his failure to promote claims, again does not address CORT's arguments regarding Marley's claims of improper demotion and disparate pay, and he does not deny CORT's contention that he has abandoned these claims. A court may grant an unopposed motion for summary judgment "if appropriate," Fed. R. Civ. P. 56(e), and the Court finds it appropriate to do so here with regard to Marley's demotion and disparate pay claims.

⁴The standards applied to claims arising under Title VII, § 1981, and the NJLAD are the same. Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152, 156 (3d Cir. 2006) (citing Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)); Lewis v. University of Pittsburgh, 725 F.2d 910, 920-21 (3d Cir. 1983).

promotion, it is deemed a "mixed-motive" case, and the tenets of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) are applied. If a plaintiff only has circumstantial evidence to support his claim, it is deemed a "pretext" case, and the tenets of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1974) are applied.

Here, Marley contends that not only can he establish his *prima facie* case, he rejects CORT's argument that this is a "pretext" case, and contends that he has direct evidence that his accent was the reason why he was denied all three promotions. CORT counters that Marley cannot meet his *prima facie* case, and even if he did, Marley cannot otherwise prove his claim under either the Price Waterhouse or McDonnell Douglas standards.

Before determining whether this is a mixed-motive or pretext case, it must first be determined whether Marley has stated a *prima facie* case for failure to promote. CORT argues that Marley was not qualified for the three positions he sought, and he cannot demonstrate that the people to whom the positions were awarded were of the same or lesser qualifications than him. Marley argues that he was qualified for the positions.

As a primary matter, Marley has not been specific in articulating which positions he applied for and when. Marley claims that after he worked for a year as a delivery driver, he expressed an interest in obtaining a promotion to sales. Marley claims that in the beginning of 2006, after three months of

6

waiting for a meeting, he met with Bill Rosato, the District General Manager, to discuss opportunities in sales. The first position Marley sought was in "executive sales."[5] Because he was not awarded that position, Marley then applied for a retail sales position. Marley was not promoted to the retail sales position. Marley also claims that at some point he also applied for the assistant distribution manager position, which was awarded to another employee.

With regard to the sales positions, it is unclear from Marley's complaint exactly which sales positions he applied for and when. It is also unclear from Marley's opposition papers, as he states, "While there is some dispute at to the exact amount of available positions, it is undisputed there were vacant positions . . . during this time [October 2005 through November 2006]." (Pl. Opp. Statement of Facts ¶ 14.) It appears from Marley's opposition papers that his initial discussion with Rosato for the executive sales position served as an open-ended application for any sales openings that became available until his departure from

---

[5] CORT explains that there is no position with the title "executive sales." CORT explains that there are two types of sales positions--inside sales and outside sales. The inside sales positions (i.e., retail sales) rent and sell furniture in CORT showrooms, and the outside sales positions (i.e., commercial account executives) sell and rent furniture to businesses. The inside sales positions are considered entry-level, and the outside sales positions are considered sales executives. For the sake of continuity with Marley's claims, the Court will refer to the positions as "executive sales" and "retail sales."

7

CORT in November 2006.  Marley's deposition testimony, however, clarifies that he affirmatively sought two sales positions–-the executive sales position in late 2005/early 2006 and the retail sales position in the spring of 2006.  (Pl. Deps. at 386-87; 11-13, 125-26.)[6]

With regard to the assistant distribution manager position, it is unclear when Marely applied for it, but it was some time prior to May 11, 2006, when the position was awarded to another employee.  (Pl. Statement of Facts ¶ 20.)

### 1. Whether plaintiff has established a *prima facie* case for failure to promote to the executive and retail sales positions

As stated above, to prove his *prima facie* case, Marley needs to demonstrate that (1) he belongs to a protected category; (2) he applied for and was qualified for a job in an available position; (3) was rejected; (4) and, after the rejection, the position remained open and the employer continued to seek applications from persons of Marley's qualifications.  It is

---

[6]As CORT points out in its sur-reply brief, Marley asserts for the first time in his sur-reply brief that he was also not promoted to two additional sales positions which were awarded to other employees (Angel Lopez and Kerry Finnigan).  The assertion of new claims in a sur-reply brief is not only procedural improper, it contradicts Marley's own testimony, which explicitly states that his claims rest upon CORT's failure to promote him to three specific positions, none of which are the two additional sales positions articulated for the first time in his sur-reply brief.  (Pl. Deps. at 386-87; 11-13, 125-26.)  Therefore, the Court will not consider any claims based on the sales positions awarded to Lopez and Finnigan.

8

undisputed that Marley belongs to a protected category and that he was not awarded the executive and retail sales positions. What is disputed is whether he was qualified for the positions, and whether persons of similar qualifications to Marley were awarded the positions instead.

CORT explains that for both sales positions, an applicant is required to have prior furniture sales experience and the ability to lift 25 pounds for the executive position, and 50 pounds for the retail position. Because Marley did not have the requisite experience or the ability meet the lifting requirements, he was not qualified for the jobs. Furthermore, CORT argues that the sales positions were awarded to people who met these requirements.

Even though Marley claims to have previous sales experience, he does not dispute that he does not have any furniture sales experience. Marley argues, however, that the requirement for previous furniture sales experience is not a true requirement because sales jobs were awarded to people with no furniture sales experience. Additionally, Marley refutes that he did not have the ability to meet the lifting requirements.

With regard to the executive sales position, Marley has failed to prove his *prima facie* case because he cannot identify who was awarded the position, and, consequently, he cannot prove that the person had similar qualifications as him. Marley has

9

stated that the successful applicant was a "short, white, Caucasian kid." (Pl. Dep. at 389.) Without any proof with regard to the successful applicant's qualifications, Marley cannot meet his burden of proof to establish his *prima facie* case for failure to promote to the executive sales position.

With regard to the retail sales position, Marley has identified the successful applicant--Chris Jagger. Marley claims that Jagger did not have any furniture sales experience prior to being promoted to retail sales. CORT, however, has provided evidence that Jagger obtained furniture sales experience while employed with CORT when he participated in CORT tent sales. Tent sales are where CORT sells furniture to the general public at discounted prices. Non-sales employees who wish to gain furniture sales experience are encouraged to participate in tent sales. Jagger participated in these sales, and Marley did not. Based upon this undisputed evidence, Marley cannot prove that the retail sales position was awarded to someone with his qualifications.

Additionally, Marley has failed to prove that he was able to meet the lifting requirement of the retail sales position. When Marley applied for the retail sales position some time in the spring of 2006, Marley had injured his shoulder in March 2006 and was placed on light duty per his doctor's orders. During that time, he was restricted to lifting no more than 20 pounds.

Furthermore, prior to the spring of 2006, Marley had been in a car accident in September 2005, and informed CORT that he could not lift heavy furniture because of his back problems. To accommodate him, CORT allowed another employee to assist Marley during furniture deliveries.

Marley contends that he applied for the retail sales position prior to his shoulder injury, and that his back injury did not prevent him from lifting 50 pounds. Even if the car accident did not prevent Marley from lifting 50 pounds, and even if he applied for the retail sales position prior to March 2006, Marley has provided no evidence that the decision to hire Jagger instead of Marley occurred prior to March 2006. It is undisputed that Marley was unable to lift more than 20 pounds as of March 2006, and it is his burden to show that he met the lifting requirements when CORT made its hiring decision. Marley has failed to do so. Thus, Marley cannot prove that the retail sales position was awarded to someone with his qualifications, or that he met the requirements of the job.[7] Consequently, Marley has

---

[7] In an attempt to prove his *prima facie* case, Marley discusses the qualifications of the successful applicants to retail sales positions for which Marley does not claim he also applied. See, *supra*, note 6. Because Marley has not asserted failure to promote claims based on these positions, the qualifications of these other employees is irrelevant to establishing his *prima facie* case for the failure to promote claims he has asserted.

Additionally, it must be noted that Marley commingles his arguments to establish his *prima facie* case with the standards for proving his case, under either Price Waterhouse or McDonnell

failed to establish his *prima facie* case of failure to promote with regard to the retail sales position.

### 2. Whether plaintiff has established a *prima facie* case for failure to promote to the assistant distribution manager position

As with the sales positions, Marley disputes that he was not qualified for the assistant distribution manager position. CORT explains that the position requires three years as a warehouse/distribution manager, and the ability to lift 25 pounds, or 50 pounds occasionally. CORT argues that Marley did

---

Douglas, after he has established his *prima facie* case. For example, Marley presents the qualifications of other employees to show that the requirement of furniture sales experience was a pretext--that is, he was denied the promotions because of his accent rather than because of his lack of sales experience, since he argues that those other employees were not required to have previous furniture sales experience. (See Pl. Opp. at 29-30.) The problem with arguing pretext during the establishment of his *prima facie* case is two-fold. First, Marley is adamant that this is a direct evidence case, which does not require the showing of pretext. Thus, arguing about pretext does not support his theory of the case. Second, it is Marley's burden to prove (1) the qualifications of the jobs he applied for, (2) that he met those qualifications, and (3) someone with his same qualifications got the job instead of him. Even if other employees who obtained retail sales positions did not have furniture sales experience, he did not compete for those positions against those allegedly similarly-experienced candidates. Thus, even if Marley could prove that the requirement for furniture sales experience was not a true requirement--which would mean that Marley would have to articulate the actual job requirements, which he has failed to do--the fact that Jagger had furniture sales experience caused Marley and Jagger to not have the same qualifications. Consequently, even if Marley met the second element of his prima facie case, he still fails to meet the last element of proving that someone with the same qualifications was awarded the position instead of him.

not meet these requirements, and that the person who was awarded the position did.

Marley does not dispute that he did not have three years of warehouse experience and he does not dispute that the successful candidate did, but he disputes that such a requirement exists. Further, he also disputes his inability to meet the lifting requirements.

In arguing that he was qualified for the position, Marley states, "Defendant cannot point to any evidence on record which illustrates a requirement of three (3) years warehouse experience." (Pl. Opp. at 31.) Marley also argues that the prior assistant distribution manager did not have three years of warehouse experience. These arguments are insufficient to prove his *prima facie* case.

First, it is not CORT's burden to establish the job requirements for the position or to establish that Marley met those job requirements. If the three-year warehouse management experience requirement is not actually a requirement, it is Marley's burden to articulate what the job requirements actually are, so that he can prove he was qualified for the position. Marley has failed to do so.[8]

---

[8]Marley states in his deposition that he was qualified for the assistant distribution manager position because he is "qualified to do anything anybody can do based on [his] academic achievement." (Pl. Dep. at 230.) Marley believes that because his experience makes him qualified to be CEO of CORT, or even the

13

Second, Marley has not demonstrated that a person with the same qualifications was awarded the job. The purpose of this element of a *prima facie* case is to establish a presumption that race was a factor in the decision making process, because all other factors are otherwise equal. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Here, the person awarded the position was someone who had eighteen years experience in warehousing, with seven years in warehouse management. The presumption created is that the person with more warehouse management experience got the assistant distribution manager job, and not that Marley did not get the job because of his accent.[9]

---

President of the United States, (Pl. Dep. at 244-45), he was qualified to be the assistant distribution manager. Marley's subjective opinion as to his own capabilities and qualifications is not sufficient to establish the second element of his *prima facie* case.

[9]This also illustrates why a plaintiff must establish his *prima facie* case prior to the application of either the Price Waterhouse or McDonnell Douglas standards. If a plaintiff is not qualified for the job, or if the job was awarded to someone with superior qualifications, it cannot be said that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998) (explaining that under Price Waterhouse to prove discrimination by direct evidence, a plaintiff faces a "high hurdle"); Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997) (explaining that under Price Waterhouse, "[t]he burden of persuasion shifts to the employer only after the plaintiff has proven that her employer acted unlawfully, and not merely on the basis of a *prima facie* showing"(citation and quotations omitted)). Additionally, without first proving that the employee was qualified for the job, or the job was given to someone with the same qualifications, it cannot be said that the "nondiscriminatory reason for the unfavorable employment decision" was merely a

Consequently, as with his claims regarding the sales positions, Marley has also failed to prove his *prima facie* case with regard to the assistant distribution manager position.

## CONCLUSION

Because Marley has failed to establish a *prima facie* case for failure to promote based on his race on his applications for the executive sales, retail sales, or assistant distribution manager positions, the Court does not need to continue the analysis of Marley's claims under either the Price Waterhouse or McDonnell Douglas standards.  Furthermore, because Marley has failed to establish his *prima facie* case, summary judgment must be entered in favor of CORT on all of Marley's claims.

An appropriate Order will be entered.

Date: August 26, 2008                          s/ Noel L. Hillman          

At Camden, New Jersey                          NOEL L. HILLMAN, U.S.D.J.

---

pretext for the employer's actions.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (discussing the burden shifting requirements under McDonnell Douglas).

15